Alley against Penguin Random House is the next case for argument. May it please the court at may it please the court. I will call you when we are ready. Wait for opposing counsel to find a seat. Mr. Lenkowski Adam Lenkowski on behalf of the pellet. Miss Alley was hired at a returns facility for Penguin in 2014. The relevant job promotion occurred in September 2018 when she became a group leader during her initial employment with Penguin Random House. She was sexually harassed by someone named Scott Lillard, who later becomes important. She reported this to a group leader named Cole Galladay. Cole Galladay did not report this to management. Her Miss Alley's employment policies required a couple of things. First of all, there was a sexual harassment reporting policy which required everyone to report whether it was themselves or on behalf of someone else who they had obtained information about. There was also a code of conduct which provided minimum binding standards which the company had to adhere to. This particularly, I quote, prohibited retaliation. Starting in the summer of 2019, at which point Miss Alley was a group leader, there were some complaints about management and there were some group meetings and people were brought in from out of state. Some information was brought to their attention about Scott Lillard. Mr. Lillard, again, at this point, some comments were made that people were uncomfortable and felt uneasy around Mr. Lillard. Particularly, these involved women. Penguin was also aware of these issues with Mr. Lillard from his goals and expectations. These had included notifications that had said that he should not have physical contact or make comments of a personal nature with other employees. On September 13th of 2019, Miss Alley was approached by a lady named Marlene Guzman who was a group leader under Miss Alley. Miss Alley, she told Miss Alley that she was being sexually harassed by Scott Lillard. They then decided to go to the ombudsperson because previous attempts— Mr. Linkoski, can I ask you a question on sort of a different subject, on the comparator issue? Sure. Have you abandoned your position? I couldn't tell from the brief if you've abandoned your position that Mr. Galladay is a proper comparator. I think when we're looking at the Ortiz standard, the answer to that is we can look at different factors. I think the fact of the matter was that Mr. Galladay was not fired or not disciplined for the exact same conduct that Miss Alley or that they claim Miss Alley was disciplined for. No question about that. I don't think there's any question about that. But they didn't learn of Mr. Galladay's conduct until three years after the fact. I think what they've said is—I think what Penguin's argument is, look, we didn't learn of the fact that he didn't report sexual harassment until three years after he didn't report sexual harassment. If we start disciplining for people that, well, we disciplined Miss Alley, now we need to discipline Mr. Galladay, sort of where does it stop? My question is for you, under the law, should Mr. Galladay be a proper comparator? They said, look, the conduct that Galladay engaged in is too old to find that it's similar conduct or analogous conduct or should have an analogous punishment to what Miss Alley faced. So I think the problem with that argument is the conduct—the fact that it was older makes it so much more worse because this same employee continued to harass people leading up to harassment against Miss Guzman. So the same policy was in place, and Mr. Galladay was not disciplined. So I believe in answer to your question, this is something that definitely should be considered, and the fact that more time has elapsed actually is a stronger evidence as to why Mr. Galladay should have been disciplined because as a result of his non-reporting, this conduct continued. And where I thought you were going originally is not that Galladay is a comparator, but under Ortiz, one of the factors we look at is are similarly situated employees treated differently? That's a different question of a comparator under a traditional McDonnell Douglas, for example, framework. Yes, yes. That is very true. That is the argument that I am making. We believe that based on this kind of similar situation, that the fact that he wasn't disciplined is very indicative of the fact that the reason alleged for Miss Alley's discipline was not, in fact, correct. There are genuine issues of material fact as to why Miss Alley was disciplined for this similar conduct. And Mr. Lenkovsky, at least what I understand Penguin to argue is to say that we discovered that she had learned of the sexual harassment. She failed to report it, but instead of reporting it, she sort of conducted her own independent investigation, and for that reason, we disciplined her. What is the argument that that is pretext? Because that's kind of what she did, at least from the facts that you stated, that's kind of what I think she did. So the testimony when we took the 30B6 deposition, what that showed was the primary reason she was demoted was for failure to report. So her conducting her own investigation, and by conducting her own investigation, what she did was she had contacted a prior employee and asked her if she had had similar— Right, but wouldn't that be troubling from Penguin's standpoint? I think the policy is she learns of it, she reports it, not that she goes out and does some, you know, contacts former employees and asks them what did you know, and what did you know, and where does it end? I think the concern here was, again, going back to the meeting in summer of 2019, that nothing was being done against Mr. Lillard, even though these allegations had already come out. So I think that is the reason why Ms. Alley went further than simply sitting on or waiting for Ms. Guzman to provide her with a written statement. And then with respect to her reporting, she actually took appropriate action. She was given the information on September 13th. She waited for a letter, which Ms. Guzman had agreed to provide. She received that on September 16th or September 17th, and then on the same day, September 17th, she contacted the ombudsperson. So she did report in that sense. She just unfortunately, for whatever reason, the ombudsperson didn't get back to her until September 26th, by which time I believe Mr. Lillard had already been fired. Is your position that her contacting the ombudsperson was sufficient reporting, or do her rules as a manager say, you must contact one of these three managers, I believe? Her rules, there are various channels for her to report to, and one of those channels is indeed the ombudsperson. So she can report to the ombudsperson, she can report to direct line of management, or she can report, I believe, to human resources. And with her concern that nothing was being done with Mr. Lillard, she chose the ombudsperson approach. So I also want to address, we've also, with respect to the Title VII claims, we've also got two other issues. We've got the suspicious timing, which was eight days later, which I understand this court has said suspicious timing alone is not enough, but we believe that there are other factors that go in, including the discipline issue with respect to the other employee. And also there was some unusual activity with respect to the changing in her management journals. Now we do recognize that the timing is not perfect, that the classification... Can I ask you a question? By the way, I don't understand that at all. I don't understand what that has anything to do with a claim of under Ortiz. I understand what happened, but I, or what is alleged, I don't, I just don't understand. And I think without that, there's sufficient evidence for this case to go forward to trial, but this court has sort of adopted a multi-tiered or multi-factor approach. And that's just something that's suspicious. We don't know, we might not know exactly why it happened, but there is certainly suspicion that they may have been using this to try to build a record against her. So also I briefly want to touch on the state law claim. The state law claim is a claim of a unilateral contract. Indiana has, there have been a number of cases which have cited a case out of Illinois, Dualdalo, which I've cited in the brief, requiring a clear promise in the handbook that it be disseminated and that the employee accept it by continuing to work. We have all of that here. The handbook created minimum binding standards, which the company was obligated to adhere by. It had clear language that retaliation was prohibited. The fact that there was no clear remedy, it really does not affect this analysis. There's an implied remedy that a violation will result in the employee being reinstated or the punishment being rescinded. Also, Penguin has argued that there were some issues with respect to whether this policy could be rewritten at any time. All it says is last, something to the effect of last updated version. If you look at the Indiana law, for example, the Hayes case, that case had very clear language which said that this policy can be rewritten at any time. This is not the same as contained in the Code of Conduct. Thank you. Unless you have any further questions, I will reserve my time. Certainly, counsel. Mr. Padgett. It may have pleased the courts. I think I'll begin with the retaliation claim and perhaps go to this comparator issue. It seems like there's some interest there. Our take on the comparator issue with Mr. Gallaudet is once plaintiff cites to Mr. Gallaudet as a comparator, plaintiff concedes that she did not engage in protected activity. But did plaintiff cite Gallaudet as a comparator or as part of the overall mix of the evidence that we are to consider in a Title VII claim under our case law? Your Honor, I understand the distinction there. I think it works both ways, though. I think to say we engaged in the same conduct and I was demoted and he was not may go to a gender discrimination claim but doesn't serve as evidence in a retaliation claim. Well, can you address more directly their argument that according to Penguin, we engaged in the same conduct? Mr. Gallaudet failed to report and Penguin says, I don't think Ms. Alley agrees, but Penguin says Ms. Alley failed to report. Okay? And Penguin did not discipline Gallaudet even though two years had passed. But Gallaudet is still right there, still a manager. And Alley's there and Alley was demoted. So can you address that specifically? Yes. I can tell you the reasoning Penguin used there, and we've touched upon it briefly already, which is to say a long time had passed. And to go back into disciplined employees for occurrences that took place two years ago doesn't set a great precedent for an employer. Can you address what came up earlier when we were talking to Mr. Linkowski that those two years are not insignificant in the life cycle of Penguin because during those two years, Mr. Lillard continued to harass and they got these multiple reports and Lillard, I apologize if I'm mispronouncing his name, had just been fired. So this wasn't a stale set of events in Penguin's view. This is still an ongoing issue at Penguin that they were in the middle of addressing. They just fired or were about to fire the harasser. Yes, Your Honor. I think partly the response to that is the reason that two years passed, at least in part, not fully, in part, was plaintiff mentioned this to essentially a co-worker, a group leader, a team leader. It's not in the record. There is some dispute as to whether or not she asked that team leader pass that information on. It's not in the record. And then failed to follow up in any way whatsoever. So it's on Ms. Alley as the harassed who reports as she should to a manager to then follow up. That's Penguin's position? I'm sorry, Your Honor. I didn't catch that question. Penguin's position is that it's on Ms. Alley who reported harassment to follow up her own harassment. No, it's Penguin's position, which came to light only much later. Okay, so this didn't come to light contemporaneously. It came to light much later. Because Gallaudet failed to report. Yes, and Penguin's position at the time is simply this. That happened two years ago. We can't get in the habit of going back and disciplining employees for things that happened two years ago. That's their position, yes. I would also note with regard to Mr. Gallaudet, there were three other employees who reported harassment contemporaneous with plaintiff. None of those employees suffered any consequences whatsoever, which cuts against the argument that Penguin retaliates against employees for reporting harassment. The other thing I want to go back to is the undisputed facts, and we touched upon this as well. The undisputed facts are that plaintiff did not report harassment as she was directed to by the company. Without any sort of protected activity, there is no retaliation claim. The fact that those facts are undisputed seems to completely undercut the retaliation claim. In terms of timing— How is it undisputed if she's saying, I did report, I reported to the ombudsperson, that was one of the three ways I could have reported? In fact, the facts show that she called the ombudsperson's office but never actually reached— I attempted to report. It was an attempted report. There was no actual report. And there's no evidence that Penguin was aware of that attempted reporting. So without knowledge of that protected activity, Penguin can't be held liable for retaliation for that protected activity. But once they find out, what's their obligation when they find out she did attempt to report? It's not clear from the record when they found out. In fact, for all I know, they may have found out when they read the complaint. I'm not certain when they learned of that. In terms of suspicious timing, there is no suspicious timing here. Suspicious timing would be somebody makes a complaint of harassment and shortly thereafter is disciplined for poor performance. Something completely unrelated to the harassment claim. That's not what we have here. We have a demotion—not a termination, by the way—a demotion, which also cuts against the retaliation claim. A demotion that occurs shortly after the conduct that properly led to the demotion took place. It's not suspicious at all. It's natural. With regard to the state law claim, I'm happy to discuss that further. But it seems to me the court doesn't need to reach that. The state law claim is essentially the same as the federal retaliation claim. And without evidence of retaliation, the state law claim can be disregarded. With that, I'll take questions. Thank you, Counsel. Anything further, Mr. Lewandowski? Briefly, Your Honor. Defendant Apelli's argument seems to be that the difference in the treatment between Ms. Alley and Mr. Golodaty was simply that a long time had passed. I believe this panel has already questioned that because it resulted actually in worse consequences. And the fact of the matter is that there is an anti-harassment and reporting policy. It applies to everyone. It does not contain a specific time limit. It simply says if you learn of harassment, that you need to report it. With respect to the other employees that were not disciplined, I think that's really more of a jury issue. There were actually two other employees, I believe, not three. Megan Haynes, and I cannot remember the other employee's name. But the fact of the matter is we're here as to whether Ms. Alley was retaliated against, not whether some other employees were retaliated against or were not retaliated against. That might become an issue at trial, but for purposes of summary judgment, that has no bearing. Finally, Mr. Padgett indicated that demotion might not be considered an adverse act. The demotion actually resulted in her losing 90 cents per hour, so this quite clearly was an adverse employment act. So, unless there are any further questions, thank you. Thank you, counsel. The case is taken under advisement.